■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR MARCHAND, Appellant.—Appeal by defendant, as limited by his brief, from a sentence of the Supreme Court, Queens County, imposed January 24, 1974, upon his conviction of manslaughter in the first degree, upon his plea of guilty, the sentence being an indeterminate prison term with a maximum of 15 years. Sentence modified, as a matter of discretion in the interest of justice, by reducing the maximum period of imprisonment to 10 years. As so modified, sentence affirmed. The sentence was excessive to the extent indicated herein. Margett, Acting P. J., Damiani, Rabin and Shapiro, JJ., concur; Christ, J., dissents and votes to affirm the sentence, with the following memorandum: Defendant was indicted on January 3, 1973 and charged with the crimes of murder and reckless endangerment in the first degree in that, on September 23, 1972, he shot George Chiaramonte in the head, causing his death, and placed a pistol barrel into the nostril of another individual. He originally pleaded guilty before Mr. Justice Dubin, but was permitted to withdraw that plea. A hearing was held to suppress certain statements defendant allegedly made to the police and to other witnesses. After Mr. Justice Balbach denied the motion, defendant pleaded guilty to manslaughter in the first degree in full satisfaction of the indictment. Defendant contends that drinking and alcoholism are the cause of his problems; he further professes that the victim actually possessed the gun which defendant wrestled from him during a fight which took place outside a bar. He claims, and the majority agrees, that the sentence imposed is excessive. I disagree. In order to fathom the conflicting stories of this tragic occurrence, it is necessary to review the various steps leading to defendant's conviction—all of which were not only known to, but overseen by, the sentencing court. At the *Huntley* hearing, a police officer testified that sometime after the killing, and while he was conducting an investigation, defendant exclaimed to him that "I hear you are looking for me. I'm the guy

that killed [him]. He was a no good junkie bum, anyway." Shortly thereafter, however, he recanted that story. Defendant testified at the hearing and recounted the events of that night as follows: "I told him that George had come in and said 'Hello,' and we shook hands and I bought him a drink and that I was still drinking til the point I heard a shot outside or what I thought was a shot and I ran outside and he was laying on the ground out there and I believe other people ran out the door with me as I ran out the door." Defendant subsequently appeared before the probation department and stated that he had been so drunk on the night in question that he did not remember anything. On January 15, 1974 he again appeared before Mr. Justice Balbach and offered to plead guilty to manslaughter in the first degree. Only after the court scrupulously advised defendant and his brother (who was present in court) of the defenses of intoxication and self-defense (and after defendant acknowledged their meaning), did the Justice accept the plea. Defendant, who was represented by counsel at all times, admitted that he shot and killed the deceased while engaged in a fight. No promises were made by the court; defendant was advised that the crime to which he pleaded carried a maximum term of imprisonment of 25 years. Defendant is 33 years old, divorced, and the father of three young children. He had his own plumbing business which supposedly netted him a substantial income. Although previously arrested on a few occasions, he was convicted only of attempted illegal possession of a vehicle identification number plate, upon his plea of guilty, for which he received a fine and 90 days in jail. The probation report also indicates that defendant professed his innocence of the foregoing crime and blamed that plea on his attorney. He has had a drinking problem which has supposedly caused all of his troubles. With the complete probation report before it, and after reviewing numerous letters of recommendation submitted on defendant's behalf, the court imposed an indeterminate term of imprisonment with a maximum of 15 years. No minimum period was imposed; the trial court left that determination to the parole board which may, if it sees fit, release defendant on parole at any time since he has already served in excess of one year on his sentence (see Correction Law, § 212). An appellate court is not simply another forum where a criminal defendant is sentenced *de novo*. This court reviews sentences already imposed and modifies them only when the trial court has abused its discretion (see, e.g., *People v Junco,* 43 AD2d 266). In this case an individual is dead; defendant's protestations of intoxication and self-defense were expunged when he knowingly, willingly and upon the advice of counsel pleaded guilty to the crime. The plea was taken after defendant had pleaded guilty once before, had withdrawn that plea, had participated in a full *Huntley* hearing and had received an adverse ruling on his motion to suppress. Mr. Justice Balbach not only questioned defendant when he pleaded guilty, but also witnessed him when he testified under oath at the hearing. Based upon this record, I perceive no abuse in the discretion exercised by the trial court. The matter is best left in the hands of the parole board, which has the entire file, and which has seen and interviewed defendant subsequent to his conviction. The maximum term imposed will keep defendant under the control of the parole board for a longer period and, based upon his record, this should help him to keep on a law-abiding path.